# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

|  |  |
|---|---|
| Craftwood Lumber Company, an Illinois corporation, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>Auburn Armature, Inc., a New York corporation,<br><br>Defendant. | Case No.<br><br>**Class Action**<br><br>**Complaint for Violations of the Junk Fax Prevention Act (47 U.S.C. § 227 and 47 C.F.R. § 64.1200); Demand for Jury Trial; Exhibit**<br><br>**[FED. R. CIV. P. 3, 8, 23; 28 U.S.C. § 1331]** |

Plaintiff Craftwood Lumber Company ("Plaintiff"), brings this action on behalf of itself and all others similarly situated, and avers:

## Introduction

1.     More than two decades ago the Telephone Consumer Protection Act of 1991, 47 U.S.C. § 227 ("TCPA") was enacted into law. The law responded to countless complaints by American consumers and businesses about the cost, disruption and nuisance imposed by junk faxes. The law prohibited the transmission of facsimile advertising without the prior express invitation or permission of the recipient. In 2005, because consumers and businesses continued to be besieged with junk faxes, Congress strengthened the law by amending it through the Junk Fax Prevention Act of 2005

(collectively "JFPA").[1] As amended, the law, together with regulations adopted by the Federal Communications Commission thereunder ("FCC regulations"), require a sender to include in its faxed advertisements a clear and conspicuous notice that discloses to recipients their right to stop future faxes and explains how to exercise that right.

2. Plaintiff brings this class action to recover damages for, and to enjoin faxing by, Defendant Auburn Armature, Inc., in violation of the JFPA and FCC regulations. Defendant's violations include, but are not limited to, the facsimile transmission of an advertisement on January 12, 2012, to Plaintiff, a true and correct copy of which is attached as Exhibit 1.

3. **Subject Matter Jurisdiction, Standing and Venue**. This Court has subject matter jurisdiction over this matter under federal-question jurisdiction, 28 U.S.C. § 1331; *see Mims v. Arrow Financial Services, LLC,* 132 S. Ct. 740, 747, 1818 L. Ed. 2d 881 (2012). Plaintiff has standing to seek relief in this Court because § (b)(3) authorizes commencement of a private action to obtain damages for Defendant's violations of the JFPA and/or FCC regulations, to obtain injunctive relief, or for both such actions. Venue is proper in this Court because Defendant sent the faxes at issue within this judicial district, including to Plaintiff and Defendant resides in this judicial district.

4. **Personal Jurisdiction.** This Court has personal jurisdiction over Defendant because it regularly conducts business within the state of Illinois, because Defendant intentionally directed the facsimile advertisements the subject of this action to recipients within the state of Illinois and because Defendant committed at least some of

---

[1] Unless otherwise noted, all statutory references are to this statute in effect since 2005.

its violations of the JFPA and/or FCC regulations within the state of Illinois.

## The Parties

5.     **Individual Plaintiff/Class Representative**.  Plaintiff Craftwood Lumber Company is, and at all times relevant hereto was, a corporation duly organized and existing under the laws of the state of Illinois, with its principal place of business in Highland Park, Illinois.  Plaintiff is, and at all times relevant hereto was, the subscriber of the facsimile telephone number (847) 831-2805 to which faxed advertisements, including Exhibit 1, were sent by Defendant.

6.     **Defendant Auburn Armature, Inc.**  Defendant Auburn Armature, Inc. is, and at all times relevant hereto was, a corporation organized and existing under the laws of the state of New York, having its principal place of business in Auburn, New York. Unless otherwise indicated, Defendant Auburn Armature, Inc. is referred to throughout this Complaint as "Auburn" or "Defendant."

## The JFPA's Prohibition Against Junk Faxing

7.     By the early 1990s, advertisers had exploited facsimile telephone technology to blanket the country with junk fax advertisements.  This practice imposed tremendous disruption, annoyance, and cost on the recipients.  Among other things, junk faxes tie up recipients' telephone lines and facsimile machines, misappropriate and convert recipients' fax paper and toner, and require recipients to sort through faxes to separate legitimate faxes from junk faxes and discard the latter.  Congress responded to the problem by passing the TCPA.  It was enacted to eradicate "the explosive growth in unsolicited facsimile advertising, or 'junk fax.'"  H.R. Rep. No. 102-317 (1991).

3

8.     In the decade following the TCPA's enactment, however, American consumers and businesses continued to be "besieged" by junk faxes because senders refused to honor requests by recipients to stop.  FCC, Report and Order on Reconsideration of Rules and Regulations Implementing the TCPA of 1991, 29 Comm. Reg. 830 ¶ 186 (2003).  Congress responded by strengthening the law through the JFPA. The JFPA, for the first time, required senders to clearly and conspicuously disclose on their faxes that recipients have the right to stop future faxes and to explain the means by which recipients can exercise that right (hereinafter collectively the "Opt-Out Notice Requirements").[2]

**Auburn's Junk Fax Programs**

9.     Auburn is an electrical products distributor, manufacturer, and services company.  Commencing within four years preceding the filing of this Complaint, Auburn conducted a fax-blasting programs to advertise the sale of its property, goods and services.[3]  These advertisements include, but are not limited to, the facsimile advertisement sent on January 12, 2012, attached as Exhibit 1.

10.     Defendant is a sender of the facsimile advertisements at issue because the advertisements were sent on its behalf and because the faxes advertised or promoted Defendant's property, goods or services, within the meaning of 47 C.F.R. §

---

[2]     The Opt-Out Notice Requirements are contained in § 227 (b)(1)(C)(iii), (b)(2)(D) and (b)(E), and the FCC's regulations and orders found at 47 C.F.R. § 64.1200(a)(4)(iii)-(vi) and the FCC's 2006 order.  *See* Federal Communications Commission, Report and Order and Third Order on Reconsideration, 21 FCC Rcd. 3787 ¶ 26 (2006).

[3]     The statute of limitations for this action is the four-year limitations period provided in 28 U.S.C. § 1658.

64.1200(a)(4), (f)(10).

11.     Plaintiff did not give Defendant "prior express invitation or permission" as used in the JFPA (§ (a)(5)) to send Exhibit 1 or any other facsimile advertisements. Plaintiff did not have an "established business relationship" as used in the JFPA (§ (a)(2)) with Defendant at the time the faxed advertisements at issue were sent to Plaintiff. Plaintiff is informed and believes, and upon such information and belief avers, that Defendant transmitted via facsimile Exhibit 1 and other advertisements without obtaining prior express invitation or permission from other recipients and/or without having an established business relationship with them.  In sending these faxes, Defendant also failed to include the disclosures mandated by the Opt-Out Notice Requirements, in further violation of the JFPA and FCC regulations.

## Class Action Allegations

12.     **Statutory Reference.**  This action is properly maintainable as a class action because (a) all prerequisites of rule 23(a) are satisfied; (b) prosecution of separate actions by one or more individual members of the class would create a risk of inconsistent or varying adjudications with respect to individual members of the class and would establish incompatible standards of conduct for Defendant, in the manner contemplated by rule 23(b)(1)(A); (c) Defendant has acted on grounds that apply generally to the class, so that final injunctive relief is appropriate respecting the class as a whole, as contemplated by rule 23(b)(2); and (d) questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy, as contemplated by rule 23(b)(3).

13.   **Class Definition**.  The Plaintiff Class consists of all persons and entities that were at the time subscribers of telephone numbers to which material was sent via facsimile transmission, commencing within four years preceding the filing of this action, which material discusses, describes, or promotes Defendant's property, goods or services, including, without limitation, Exhibit 1 hereto ("Plaintiff Class").  Plaintiff reserves the right to amend the class definition following completion of class certification discovery.

14.   **Numerosity**.  Plaintiff is informed and believes, and upon such information and belief avers, that the Plaintiff Class is sufficiently numerous that the joinder of all members is impracticable due to the class's size and due to the relatively small potential monetary recovery for each Plaintiff Class member, in comparison to the time and costs associated with litigation on an individual basis.

15.   **Typicality.**  The claims of Plaintiff are typical of the Plaintiff Class in that, among other things, they were sent faxed communications by Defendant that violated the JFPA and FCC regulations; they have same claims under the same statute and regulations; and they are entitled to the same statutory damages and injunctive relief.

16**.**   **Adequacy of Representation**.  The Plaintiff Class will be well represented by the class representative and class counsel.  Plaintiff appreciates the responsibilities of a class representative and understands the nature and significance of the claims made in this case.  Plaintiff can fairly and adequately represent and protect the interests of the Plaintiff Class because there is no conflict between its interests and the interests of other class members.  Class counsel have the necessary resources, experience (including significant experience in litigating cases under the Act and FCC regulations) and ability to prosecute this case on a class action basis.

17.     **Common Questions of Law and Fact Are Predominant.**  Questions of law and fact common to the class predominate over questions affecting only individual class members:

A.     **Common Questions of Fact.**  This case presents numerous questions of fact that are common to all class members claims.  Defendant has engaged in a standardized course of conduct vis-à-vis Plaintiff and class members, and their damages arise out of that conduct.  Plaintiff is informed and believes, and upon such information and belief avers, that the case arises out of a common nucleus of fact because, among other things, the faxes at issue advertised Auburn's property, goods or services, the faxes are the product of an organized fax-blasting campaign targeting the class, and the faxes were sent in the same or similar manner.

B.     **Common Questions of Law.**  The case presents numerous common questions of law, including, but not limited to:

(1)     whether the faxes at issue advertise the commercial availability or quality of property, goods or services and therefore fall within the ambit of the JFPA and FCC regulations;

(2)     Defendant's mode and method of obtaining the telephone numbers to which the faxes at issue were sent and whether that mode and method complied with the requirements of § (b)(1)(C)(ii) and FCC regulations;

(3)     whether Defendant obtained prior express invitation or permission as defined in § (a)(5);

(4)     whether Defendant complied with the Opt-Out Notice Requirements of the JFPA and FCC regulations, and the legal consequences of the failure to comply with those requirements;

(5)     what constitutes a knowing or willful violation of the JFPA within the meaning of § (b)(3);

(6)     whether Defendant committed knowing and/or willful violations of the JFPA and/or FCC regulations;

(7)     whether damages should be increased on account of Defendant's knowing and/or willful violations of the JFPA and/or FCC regulations and, if so, by what amount; and

(8)     what injunctive relief as prayed for in the Complaint is warranted.

18.     **Appropriate Method for Fair and Efficient Resolution of the Controversy.**  A class action is an appropriate method for the fair and efficient adjudication of this case for several reasons, including:

A.     Prosecuting separate actions by individual class members would create a risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for Defendant.

B.     Questions of law and fact common to members of the class, including those identified in paragraph 17, predominate over any questions affecting only

8

individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

        C.      Class adjudication will conserve judicial resources.

        D.      Members of the Plaintiff Class are not likely to join or bring an individual action due to, among other reasons, the small amount to be recovered relative to the time, effort and expense necessary to join or bring an individual action.  Because the statutory minimum damage is $500 per violation and the JFPA does not authorize an award of attorneys' fees to a successful plaintiff, individual action to remedy Defendant's violations would be uneconomical.  As a practical matter, the claims of the vast majority of the Plaintiff Class are not likely to be redressed absent class certification.

        E.      Equity dictates that all persons who stand to benefit from the relief sought herein should be subject to this action and, hence, subject to an order spreading the cost of litigation among class members in relationship to the benefits received.

        F.      Class adjudication would serve to educate class members about their rights under the Act and FCC regulations to stop unwanted junk faxes, a particularly important public purpose.

### Claim for Relief for Violations of the JFPA and FCC Regulations

19.     **Incorporation**.  Plaintiff and the Plaintiff Class reassert the averments set forth in paragraphs 1 through 18, above.

20.     **Defendant's Violations of the Act and FCC Regulations.**  Commencing

within four years preceding the filing of this action, including, without limitation, on January 12, 2012, Defendant violated the JFPA and FCC regulations by, among other things, by sending from or to the United States, unsolicited advertisements and/or advertisements that violate the Opt-Out Notice Requirements, via facsimile, from telephone facsimile machines, computers, or other devices to telephone facsimile machines via facsimile telephone numbers of Plaintiff and members of the Plaintiff Class.

21.     **Private Right of Action.**  Under § (b)(3), Plaintiff has a private right of action to bring this claim for damages and injunctive relief on behalf of itself and on behalf of the Plaintiff Class to redress Defendant's violations of the JFPA and FCC regulations.

22.     **Injunctive Relief.**  Plaintiff is entitled to have preliminary and permanent injunctions entered to: (1) prohibit Defendant, its employees, agents, representatives, contractors, affiliates and all persons and entities acting in concert with them, from committing further violations of the JFPA and FCC regulations, and thereby, among other things, prohibiting Defendant, its employees, agents, representatives, contractors, affiliates, and all persons and entities acting in concert with them, from sending any further unsolicited faxed advertisements to any person or entity or sending faxed advertisements that do not comply with the Opt-Out Notice Requirements; (2) require Defendant to deliver to Plaintiff all records of facsimile advertisements sent commencing within four years preceding the filing of this action, including all content sent via facsimile, fax lists, and transmission records; (3) require Defendant to adopt ongoing educational, training and monitoring programs to ensure compliance with the JFPA and FCC regulations, and limiting facsimile advertising activity to personnel who have undergone such training; (4) require Defendant to provide written notice to all persons and entities to whom Defendant sent, via facsimile transmission, advertisements in

violation the JFPA and/or FCC regulations, warning such persons and entities that the faxing of unsolicited advertisements, or advertisements that do not comply with the Opt-Out Notice Requirements, violates the JFPA and that they should not be led or encouraged in any way by Defendant's violations of the JFPA and/or FCC regulations to send advertisements of their own that violate the JFPA and/or FCC regulations; and (5) require Defendant to conspicuously place on the homepage of its website the warnings contained in subsection 4 of this paragraph.

23. **Damages.** Plaintiff and all members of the Plaintiff Class are entitled to recover the minimum statutory amount of $500 for each violation by Defendant of the JFPA and FCC regulations, as expressly authorized by § (b)(3). In addition, Plaintiff is informed and believes, and upon such information and belief avers, that Defendant committed its violations willfully and/or knowingly and that the amount of statutory damages should be increased up to three times, also as authorized by § (b)(3).

### Prayer for Relief

WHEREFORE, Plaintiff and the Plaintiff Class pray for relief against Defendant:

1. Certifying a class described in paragraph 13 of the Complaint;

2. Appointing Plaintiff as representative for the Plaintiff Class and awarding Plaintiff an incentive award for its efforts as class representative;

3. Appointing Plaintiff's counsel as counsel for the Plaintiff Class;

4. Awarding statutory damages in the minimum amount of $500 for each violation of the JFPA and/or FCC regulations and the trebling of such statutory damages,

in an overall amount not less than $1,000,000, exclusive of interest and costs, according to proof;

5.      Entering the preliminary and permanent injunctions requested in paragraph 22 of the Complaint;

6.      Ordering payment of Plaintiff's costs of litigation, including, without limitation, costs of suit and attorneys' fees, spread among the members of the Plaintiff Class in relation to the benefits received by the Plaintiff Class;

7.      Awarding Plaintiff and the Plaintiff Class prejudgment interest; and

8.      Awarding Plaintiff and the Plaintiff Class such other and further relief as the Court shall deem just and proper.

## Jury Demand

Plaintiff demands trial by jury on all issues triable by jury.

DATED:  September  2, 2014

By: s/ Scott Z. Zimmermann

One of the Attorneys for Plaintiff Craftwood Lumber
Company and for all others similarly situated

Scott Z. Zimmermann [California Bar No. 78694;
Admitted to the General Bar of this Court]
Email: szimm@zkcf.com
601 S. Figueroa St., Suite 2610
Los Angeles, CA 90017
Telephone:  (213) 452-6509

*Additional Counsel:

C. Darryl Cordero [California Bar No. 104527;
Admitted to the General Bar of this Court]
Email: cdc@paynefears.com
Payne & Fears LLP
801 S. Figueroa St., Suite 1150
Los Angeles, CA 90017
Telephone: (213) 439-9911


Frank Owen [Illinois Bar No. 3124947;
Florida Bar No. 0702188]
Email: FFO@CastlePalms.com
Frank F. Owen & Associates, P.A.
1091 Ibis Avenue
Miami Springs, Florida 33166
Telephone:  (954) 964-8000

** LOCAL Counsel:

Charles R. Watkins [Illinois Bar No.
3122790]
Email: charlesw@gseattorneys.com
Guin, Stokes & Evans, LLC
321 South Plymouth Court, Suite 1250
Chicago, IL 60604
Telephone:  (312) 878-8391

13